# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

JOSEPH D. COLABUFO,                    §
                                       §
             *Plaintiff*,              §
                                       §
*versus*                               §    CIVIL ACTION NO. 5:13-188
                                       §
CAROLYN W. COLVIN,                     §
Acting Commissioner of                 §
Social Security,                       §
                                       §
             *Defendant*.              §

## REPORT AND RECOMMENDATION

Joseph D. Colabufo ("Colabufo") seeks review of an adverse decision on his application for disability-based benefits under the Social Security Act.[1]

## I.  Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence.  *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).  When reviewing acts of administrative agencies, courts also must take "due account" of "the rule of prejudicial error."  5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the

---

[1]      Colabufo applied for disability insurance benefits available under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Disability Insurance benefits provide income to insured individuals forced into involuntary, premature retirement by reason of disability.  *See* 42 U.S.C. § 423(d).

parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II.  Background

Colabufo claims that he became unable to work as of September 1, 2010, due to kidney disease, renal vein thrombosis, diabetes, chronic obstructive pulmonary disease ("COPD"), inguinal hernia, and a back condition.  (T. 154).[2] Administrative law judge, Elizabeth W. Koennecke ("ALJ Koennecke"), conducted an evidentiary hearing, and eventually denied Colabufo's application in a written decision.[3]  The Appeals Council declined review.

## III.  Commissioner's Decision

ALJ Koennecke utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[4] She determined at Step 1 that from September 1, 2010, through September 30, 2011, Colabufo engaged in substantial gainful activity, and, therefore, was not entitled to benefits for that period of alleged disability.[5]  (T. 15-16).

---

[2]     "T." followed by a number refers to the page of the administrative record.  (Dkt. No. 8).

[3]     Following an original evidentiary hearing, ALJ Koennecke held the record open for ten days to permit Colabufo to submit updated records.  (T. 36-37).  She received late submissions even after her decision had been rendered; thus, the case was recalled and reconsidered based on these late submissions. (T. 12).

[4]     The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).  A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[5]     *See* 20 C.F.R. § 404.1575.

For the remaining relevant period (*i.e.*, October 1, 2011, through July 9, 2012), ALJ Koennecke found at Step 2 that Colabufo suffers from conditions that are "severe impairments" in that they significantly limit Colabufo's ability to perform basic work activities. Those impairments are *nephrotic syndrome*, *hypercoagulate state*, and *lumbar spondylosis*. (T. 16). ALJ Koennecke declined to find other diagnosed, treated and self-reported abnormalities as severe impairments because, in her view, they do not significantly limit Colabufo's functioning. Those conditions are *diabetes*, *COPD*, *tobacco abuse*, *sleep apnea*, *high blood pressure*, *high cholesterol*, *dyspnea*, *edema*, *inguinal hernia* and *carpal tunnel syndrome*. (T. 16).

At Step 3, ALJ Koennecke found that Colabufo's impairments, singly or in combination, are not presumptively disabling under the Commissioner's listings of disabling mental and physical impairments.[6] (T. 17). Accordingly, she continued with sequential evaluation, and determined Colabufo's "residual functional capacity." She found that Colabufo can still perform a full range of sedentary work with no limitations.[7] (T. 17).

ALJ Koennecke next found at Step 4 that Colabufo's residual functional capacity precludes performance his past relevant work. At Step 5, ALJ Koennecke consulted Medical–Vocational Guidelines commonly referred to as

---

[6]     The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

[7]     ALJ Koennecke's complete residual functional capacity finding was:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) in that he can lift/carry up to 10 pounds, stand for 2 hours out of an 8 hour workday, walk for 2 hours out of an 8 hour workday, and sit for 6 hours out of an 8 hour workday.

(T. 17).

"the grids."[8]   (T. 20-21).  She concluded that a finding of "not disabled" was appropriate under Rule 201.25, and Colabufo's application was denied.  (*Id*.).

## IV.   Points of Alleged Error

Colabufo's brief to the court argues that ALJ Koennecke's erred as follows:

1.  The Commissioner's determination that Plaintiff is not disabled is against the weight of substantial evidence, the consistency of the record as a whole, and violates the treating physician rule;

2.  The Commissioner's determination improperly and insufficiently evaluated and assessed Plaintiff's credibility in formulating the Plaintiff's residual functional capacity in violation of Social Security Ruling 96-7p and 20 C.F.R. § 1529;

3.  The Commissioner improperly determined the Plaintiff had performed substantial gainful activity after the date of his alleged onset of disability; and

4.  The Commissioner's determination improperly applied the Medical-Vocational Rules and did not employ a vocational resource to properly consider how the Plaintiff's exertional and nonexertional limitations would erode the sedentary occupational base.

(Dkt. No. 10, p. i).

In addition, Colabufo submitted a "Motion For Admission Of Additional Medical Opinion Evidence" wherein he asks the court to "admit the attached additional medical opinion evidence in this cause."  (Dkt. No. 11, p. 1).  The proposed new evidence consists of a post-hearing letter from Colabufo's treating pain management specialist.  Therein, Dr. Martin A. Schaeffer, M.D., expressed

---

[8]     The Medical Vocational Guidelines ("grids") are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

opinions relating to Colabufo's ability to participate in physical activities and sustain employment.

The Commissioner submitted a brief in opposition to Colabufo's alleged errors (Dkt. No. 13), but did not respond to Colabufo's request for admission of new evidence.

## V.  New Evidence

Colabufo's motion for admission of additional medical opinion evidence is a threshold matter because – if the motion is granted – this matter must be remanded to the Commissioner for consideration of new evidence.

*A.*     *Proposed New Evidence*

In a letter to Colabufo's counsel, Dr. Schaeffer summarizes his treatment of Colabufo's back complaints, commencing in January 2011, on a monthly to bi-monthly basis.  (Dkt. No. 11-1, p. 2).  He opines that, despite trying to utilize pain control type medications and neuropathic medicines, Colabufo still has significant impairment, and is unable to sit, stand, or walk for any significant periods of time.  (*Id*.).  Dr. Schaeffer further states:

> Along with his breathing difficulties, it would make it very difficult for Mr. Colabufo to obtain and keep employment at this point.  Even with restrictions where he is allowed to sit and rest for short periods of time on an as needed basis, he still would find it very difficult to be gainfully employed as his breathing along with his chronic pain conditions would make it almost impossible for him to participate in any type of significant physical activity and his ongoing low back pain complaints make it very difficult for him to be in a sedentary position.  Due to his medical impairments, it would be likely that he would be out of work and unable to participate in gainful employment numerous times given in a 30 day period.

(*Id*.).  Finally, Dr. Schaefer volunteers that "it is appropriate for Mr. Colabufo to apply to Social Security Disability." (*Id*.).

Dr. Shaeffer's letter is dated November 13, 2012 (after ALJ Koennecke's decision).  (Dkt. No. 11-1, p. 2) .  The facsimile cover page from Dr. Schaeffer's office to Colabufo's counsel's office is dated December 20, 2012 (after the Appeals Council declined to review ALJ Koennecke's decision).  (Dkt. No. 11-1, p. 1).  Accordingly, Dr. Shaeffer's report is not in the official administrative record furnished to the court.

B.     *Governing Legal Principles*

Judicial review of final decisions of the Commissioner is authorized in 42 U.S.C. § 405(g).  The sixth sentence of that section provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security . . . .

42 U.S.C. § 405(g).  Congress amended this provision in 1980 to add a limiting clause.  Under that amendment, reviewing courts now may order that additional evidence be taken before the Commissioner:

> only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .

*Id.*  Congress thus made it "unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases." *See Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).

To satisfy post-amendment statutory requirements, a proponent of remand for consideration of additional evidence must show that such  evidence is:

> (1) "new" and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.  The

concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, a claimant must show (3) good cause for failure to present the evidence earlier.

*Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal citations omitted); *see also Mulrain v. Commissioner of Soc. Sec.*, 431 Fed. App'x 38, 39 (2d Cir. 2011) (summary order); *Lisa v. Secretary of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

This has been described as a "conjunctive threefold requirement." *Cruz-Santos v. Callahan*, No. Civ. A. 97-439, 1998 WL 175936, at *2 (D. N.J. Apr. 7, 1998). In other words, remand for taking of additional evidence is appropriate only when a claimant satisfies *all three criteria. See id*; *see generally Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (three-pronged requirement for sentence six remand).

C.    *Application*

For present purposes, the undersigned assumes *arguendo* that Dr. Schaeffer's opinion letter to counsel is new (despite being substantially cumulative of evidence contained in his treatment notes and in existence prior to the Appeals Council's denial of review) and material (because it evaluates Colabufo's ability to engage in ordinary work activities much more restrictively than ALJ Koennecke's residual functional capacity assessment). Colabufo fails, however, to show good cause for not presenting the evidence earlier.

Dr. Schaeffer treated Colabufo from May, 2011, through May, 2012. (T. 409-420, 597-604). Colabufo offers no explanation or reason why a forensic opinion from Dr. Schaeffer was not sought earlier. In absence thereof, a reviewing court cannot conclude that the third prong of the "conjunctive

threefold requirement" described above is met. *See, e.g, Lisa*, 940 F.2d at 45 ("[Claimant] must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding. Rather, she must establish good cause for failing to *produce and present* the evidence at that time.") (emphasis added); *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir.1990) ("[a] claimant does not meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied. *The claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim*.") (citation omitted, emphasis added)). To allow Colabufo to supplement the record now with a more favorable opinion would run afoul of congressional intent to discourage easy second bites at the apple and unending merry-go-rounds.[9] Consequently, there is no valid basis to remand for consideration of new evidence.

## VI. Substantial Gainful Activity

Colabufo claims September 1, 2010, as his disability onset date. ALJ Koennecke determined at Step 1 of sequential evaluation that Colabufo is ineligible for benefits commencing as of that date because Colabufo engaged in "substantial gainful activity" from September 1, 2010, through September 30, 2011. (T. 15-16). Specifically, ALJ Koennecke determined that Colabufo engaged in substantial gainful activity during this period because (a) he

---

[9]    When enacting the amendment, Congress reaffirmed and strengthened its intent that decisions of the Commissioner be final except in limited circumstances. *See Firpo v. Chater*, 100 F.3d 943, 1996 WL 49258, at *3 (2d Cir. 1996) ("[c]oncerns for finality dictate that claimants be given a single opportunity to prove their entitlement to benefits for a particular period"); *Tirado v. Bowen*, 842 F.2d 595, 596 (2d Cir. 1988) ("claimants ordinarily should have but one opportunity to prove entitlement to benefits, otherwise disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations").

performed services significant to the operation of his cleaning company business, and (b) received a substantial income therefrom. (*Id.*).

## A.    *Colabufo's Challenge*

Colabufo argues that ALJ Koennecke "improperly determined" that he performed services significant to the operation of his cleaning company business because the evidence establishes the he only showed up at his business once or twice a week to direct his children in performance of the work, and he received family assistance "to do most of the work required." (Dkt. No. 10, pp. 11-13). Colabufo does not challenge ALJ Koennecke's other finding that he received substantial self-employment income during the period in question. (*Id.*).

## B.    *Governing Legal Principles*

"Substantial gainful activity" is "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. When a claimant engages in substantial gainful activity, he is not disabled, regardless of the severity of his impairment(s) and resulting limitations. *See* 20 C.F.R. § 404.1520(a)(4)(i), (b).

"Substantial work activity" is "work activity that involves doing significant physical or mental activities," regardless of whether it is done on a part-time basis. 20 C.F.R. § 404.1572(a). "Gainful work activity" is "work activity that [the claimant] do [es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).[10]   A regulation and ruling provide specific guidelines for evaluating work activities performed by self-employed individuals such as

---

[10]    When a self-employed claimant's countable income, exceeds certain threshold amounts, it is considered substantial. *See* 20 C.F.R. § 404.1575(c). The Commissioner provides a formula for determining whether earnings from self-employment establish substantial gainful activity. *See id.; see also* SSR 83-4, TITLE II AND XVI: DETERMINING WHETHER WORK IS SUBSTANTIAL GAINFUL ACTIVITY-SELF-EMPLOYED PERSONS, 1983 WL 31256, at *4-7 (SSA 1983).

Colabufo. *See* 20 C.F.R. § 404.1575(a)(2); SSR 83-4, TITLE II AND XVI: DETERMINING WHETHER WORK IS SUBSTANTIAL GAINFUL ACTIVITY–SELF-EMPLOYED PERSONS, 1983 WL 31256, at *2 (SSA 1983). Specifically, the Commissioner prescribes three tests listed in the note below.[11]

## C.  *Application*

Whether Colabufo performed services significant to the operation of his cleaning business (Test One) is, perhaps, debatable.[12] The court need not resolve that issue, however, as it is undisputed that Colabufo's self-employment income during the disputed period exceeded threshold levels for substantial gainful activity (Test Three).[13] Accordingly, ALJ Koennecke did not err when excluding

---

[11]  The three tests prescribed under 20 C.F.R. § 404.1575(a)(2) are:

(i)  Test [O]ne:  You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.

(ii)  Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii)  Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

[12]  While the record does not clearly support ALJ Koennecke's finding that Colabufo "performed more than half the time required for the management of the business," it does reflect that in addition to supervising, he used machines, tools and equipment, wrote reports, walked for 1.5 hours, stood for 1.5 hours, handled small objects for 20 minutes, used a blower for one hour, vacuumed for 30 minutes, mopped and engaged in some cleaning duties himself. (T. 53, 181).

[13]  The 2010 and 2011 substantial gainful activity level, as established by the Commissioner, was $1000/month for the non-blind. *See* http://www.ssa.gov/oact/cola/sga.html (last visited April 25, 2014). Colabufo does not dispute ALJ Koennecke's findings that he received self-employment income of $16,129.00 in 2010 and $11,379.00 in 2011. (T. 141, 143).

the period between September 1, 2010 and September 30, 2011, from consideration for potential disability insurance benefits.

## VII.   Residual Functional Capacity

Colabufo's first and second points of error (relating, respectively, to weighting of medical evidence and subjective testimony) both seek to impugn ALJ Koennecke's assessment of Colabufo's residual functional capacity. Analytically, these points may be considered together.

*A.    Residual Functional Capacity*

"Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a)(3). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. Descriptions and observations of limitations from all sources, medical, claimants and lay persons are admissible and relevant on this issue.[14]

When determining residual functional capacity, administrative law judges must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. § 404.1520(e), 404.1545; SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *5 (SSA July 2, 1996).

---

[14]      *See* 20 C.F.R. § 404.1545(a)(3).

*B.*    *Colabufo's Challenges to Residual Functional Capacity Determination*

1.    <u>Weighting of Medical Opinion</u>

ALJ Koennecke considered medical opinion evidence from five acceptable medical sources that included four treating physicians (primary care, hematologist, nephrologist and cardiologist) and one consultative examining physician (internal medicine).  The treating hematologist (Dr. Poiesz), declined to provide a medical opinion regarding Colabufo's current ability to do work-related activities because more than 6 months had elapsed between the time he last evaluated or treated Colabufo.  (T. 321).  The primary care physician (Dr. Martin), treating cardiologist (Dr. Silverman), and treating nephrologist (Dr. Gofran) all provided opinions indicating that Colabufo is too limited by his impairments to engage in a full range of sedentary work.[15]

---

[15]`    Dr. Martin opined that Colabufo could stand and walk for 2 hours out of an 8-hour workday, but only for 5 minutes at a time; could sit for only 1 hour without interruption; could reach in all directions, handle, finger, feel, push and pull bilaterally only occasionally; could never operate foot controls; could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl; could never tolerate exposure to unprotected heights, moving mechanical parts, or operate a motor vehicle; could only occasionally tolerate exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme temperatures, and vibrations; and could never ambulate without a wheelchair, walker, 2 canes, or 2 crutches.  (T. 504-09).

Dr. Silverman determined that Colabufo could sit for 2 hours, stand for 30 minutes, and walk for 10 minutes without interruption; in an 8-hour workday he could only stand for 1 hour and walk for 1 hour; could never reach in any direction; never climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or crawl; could never tolerate exposure to unprotected heights or moving mechanical parts; could never tolerate exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme temperatures, and vibrations . (T. 510-16).

Dr. Gofran opined that Colabufo was limited to lifting and carrying no more than 10 pounds occasionally; could sit, stand, and walk for only 15 minutes at a time, for a combined total of 6 hours in an 8-hour workday; he required the use of a cane to ambulate; could never finger bilaterally and could only occasionally reach in all directions, handle, feel, push and pull; could only occasionally climb stairs and ramps and crawl; could never climb ladders and scaffolds, balance, stoop, kneel, or crouch; could never tolerate exposure to unprotected heights or moving mechanical parts; could never tolerate exposure to dust, odors, fumes, and pulmonary irritants, extreme temperatures, and vibrations.  (T. 586-92).

The consultative internal medicine examiner (Dr. Ganesh) opined that Colabufo lacks "gross" limitations for sitting, standing or walking, but has "mild to moderate" limitations with lifting, carrying, pushing and pulling. Although she found Colabufo's gait "normal," she also found that he cannot walk on his heels. Lumbar spine flexion was "limited," and Colabufo's prognosis is "stable but guarded." (T. 330–334).

ALJ Koennecke gave "great weight" to the opinion of hematologist, Dr Poiesz. (T. 18). She afforded "some weight" to opinions of cardiologist, Dr. Silverman, and consulting internal medicine examiner, Dr. Ganesh. (T. 19). She afforded "little weight" to opinions of primary care physician, Dr. Martin. (*Id*.). She afforded "very little weight" to opinions of nephrologist, Dr. Gofran. (*Id*.).

Colabufo challenges this weighting of the medical evidence, asserting that it violates the "treating physician rule" and otherwise disregards the Commissioner's prescribed protocols for evaluating medical opinion.[16] Secondly, Colabufo argues that ALJ Koennecke's residual functional capacity assessment is unsupported by substantial evidence because ALJ Koennecke did not consider limitations and restrictions imposed by all of Colabufo's impairments, both severe and those not severe. (Dkt. No. 10, pp. 6-9).

---

[16]     Administrative law judges must give controlling weight to opinions of treating sources regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). When controlling weight is not afforded to treating source opinion, or when other medical source opinion is evaluated with respect to severity of impairments and how they affect individuals' ability to function, the degree of weight to be given such evidence is determined by applying certain generic factors: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors. 20 C.F.R. § 404.1527(c).

## 2.  Weighting of Subjective Testimony

Colabufo and also family members testified with respect to the intensity, persistence and limiting effects of his symptoms.  (T. 39-55, 203-21).  If credited, much of their collective testimony would preclude a finding of residual functional capacity for a full range of sedentary work.[17]  ALJ Koennecke found Colabufo's testimony "partially credible," but only to the extent it was "consistent with all of the evidence of record."  (T. 18).  She gave "minimal weight" to family members' testimony because they were "sympathetic, non-medical parties who are interested in the financial well-being of claimant."  (T. 19).

Colabufo challenges this finding on a very similar ground, *i.e.*, failure to follow a prescribed protocol.[18]

## C.  *Discussion and Analysis*

Colabufo's first argument regarding weighting of medical evidence is that ALJ Koennecke made improper credibility choices.  Undoubtedly, those choices were conspicuously unconventional.  The only opinions to which she afforded

---

[17]      *See, supra*, fn. 14.

[18]      The Commissioner provides explicit guidance to help administrative law judges decide how much weight to give claimants' subjective self-evaluations. First, a formally promulgated regulation requires—once an impairment is identified—consideration of seven specific, objective factors that naturally support or impugn subjective testimony of disabling pain and other symptoms. *See* 20 C.F.R. § 404.1529(c).

Second, a ruling directs administrative law judges to then follow a two-step process: An adjudicator must consider whether there is an underlying medically determinable physical or medical impairment that could reasonably be expected to produce the individual's pain or other symptoms alleged. Next, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *See* SSR 96-7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996).

ALJ Koennecke specifically and accurately cited the governing regulation, the two-step process and all interpretive rulings in Finding 6, page 6 of her decision.  (T. 17).

*great weight* were those of Colabufo's former hematologist, Dr. Poiesz, who expressly stated that he was *unable to provide a medical opinion regarding Colabufo's ability to do work-related activities* (due to passage of too much time between his last examination of Colabufo and the date his opinion was requested),[19] and a July 2011 opinion of Dr. Silverman who also stated he was *unable to provide a medical opinion regarding Colabufo's ability to do work-related activities.*[20] (T. 18-19). ALJ Koennecke elected to give *little weight* to opinions of treating, primary care physician, Dr. Martin, and *very little weight* to opinions of treating nephrologist, Dr. Gofran, because they expressed opinions in Social Security Administration check-a-box/fill-in-the-blank forms without clinical findings supporting their assessments. (T. 19). She gave *some weight*, however, to the May 2012 opinions of treating cardiologist, Dr. Silverman, who expressed his opinions on exactly the same form.[21] (*Id.*). She also gave *some weight* to opinions of consultative internal medicine examiner, Dr. Ganesh, even though she expressed opinions in imprecise and enigmatic terms such as "gross," "moderate," "mild" and "stable but guarded."[22] (*Id.*).

---

[19] By checking relevant boxes, Dr. Poiesz did opine that Colabufo had "no limitations" in his ability to stand and/or walk, sit, push and pull. (T. 321).

[20] When asked to describe any limitations in physical activity as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, Dr. Silverman opined "none from a cardiac standpoint but pt [sic for patient] has hypercoagulate state which may limit activity as directed by oncology/hematology." (T. 328).

[21] In each instance, the form, HA-1151-BK, was an official Social Security Administration form titled "Medical Source Statement of Ability to Do Work-Related Activities (Physical).

[22] (T. 333).

The court, however, need not determine here whether these irregular choices consisted of improper "cherry picking" of the evidence,[23] or were so illogical as to exceed bounds of sound discretion, or otherwise crossed a line of correctitude. Irrespective of whether ALJ Koennecke's weighting of the medical evidence was correct or infirm, Colabufo's second argument is meritorious and compels a remand. Specifically, ALJ Koennecke's residual functional capacity determination cannot be sustained in any event because it failed to account for any functional effects of Colabufo's nonexertional limitations.

Impairments, both severe and non-severe, can limit an individual's ability to meet exertional and nonexertional demands of employment.[24] The term "exertional" refers to primary strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling) for various levels of work.[25] "Nonexertional" refers to any impairment-caused limitation of function which

---

[23] While administrative law judges are entitled to resolve conflicts in the evidentiary record, they cannot pick and choose only evidence that supports their particular conclusions. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)). In other words, an administrative law judge may not "cherry-pick" medical opinions that support his or her opinion while ignoring opinions that do not. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

[24] The Commissioner instructs all components of the Social Security Administration:

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *5 (SSA July 2, 1996).

[25] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling). *See* 20 C.F.R. § 404.1569a(b).

directly affects capability to perform work activities other than primary strength activities. It includes limitations affecting the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities.[26] Examples of nonexertional limitations include difficulty tolerating some physical feature(s) of certain work settings, *e.g.*, inability to tolerate dust or fumes; and difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *See* 20 C.F.R. § 404.1569a(c)(1)(i)(vi).

Three of Colabufo's treating sources (cardiologist, nephrologist and primary care physician) expressed consistent opinions that Colabufo has numerous nonexertional limitations. (T. 504-09, 510-16, 586-92). Collectively, these limitations include (a) use of cane and wheelchair, (b) inability to climb, balance, stoop, kneel, crouch and crawl, (c) inability to tolerate exposure to unprotected heights, moving mechanical parts or operate a motor vehicle, (c) ability to only occasionally tolerate humidity and wetness, dust, odors, fumes or pulmonary irritants, extreme temperatures and vibrations, and (d) complete inability to finger bilaterally and only occasionally reach in all directions. ALJ Koennecke discounted these treating source opinions regarding *severity* of Colabufo's limitations, but she does not dispute their *existence* (except, perhaps, with respect to Colabufo's need for use of a cane and wheelchair).[27]

---

[26]     SSR 83-10, Titles II and XVI: Determining Capability to do Other Work the Medical Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (SSA 1983).

[27]     Colabufo presented himself at the administrative hearing in a wheelchair. (T. 47-48). ALJ Koennecke noted that at a consultative examination 11 months earlier he exhibited a normal gait, and that treatment notes reflected that he did not need assistance ambulating or that he had "slow ambulation." (T. 18).

ALJ Koennecke recognized lumbar spondylosis as a severe impairment (noting that an April 2011 MRI of Colabufo's lumbar spine revealed a large disc herniation at L5-S1 as well as degenerative changes). (T. 16). Yet, ALJ Koennecke disregards nonexertional limitations typically accompanying this impairment (inability to stoop, kneel, crouch, and crawl) that were recognized by no less than three of Colabufo's treating sources. This omission is significant because a full range of sedentary work requires ability to stoop up to one-third of an ordinary work day, and a complete inability to stoop (as opined by Colabufo's treating sources) significantly erodes the unskilled sedentary occupational base to the extent that a finding of "disabled" usually will apply.[28] A complete, accurate and fair residual functional capacity assessment would recognize and quantify at least some of these nonexertional limitations.

ALJ Koennecke declined to find Colabufo's COPD and sleep apnea as severe impairments. It is undisputed, however, that he has been diagnosed with these abnormalities, and has been prescribed oxygen for day and night use. ALJ Koennecke fails to address any environmental restrictions. For the most part, this omission may be insignificant, as few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, heat, wetness, humidity, vibration or unusual hazards such that a need to avoid all

---

[28] An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

See SSR 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK—IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN SEDENTARY WORK, 1996 WL 374185, at *8 (SSA July 2, 1996) (emphasis in original).

exposure to such conditions would not, by itself, result in a significant erosion of the occupational base.[29] But some environmental restrictions, such as intolerance of odors or dust, can significantly erode that base, and must be evaluated on an individual basis.[30] Treating cardiologist (Dr. Silverman) and treating nephrologist (Dr. Gofran) both opined that Colabufo cannot tolerate exposure to dust, odors, fumes, and pulmonary irritants, while treating primary care physician (Dr. Martin) opined that Colabufo only occasionally can tolerate exposure to dust, odors, fumes, and pulmonary irritants. (T. 508, 514, 590). Again, a valid residual functional capacity assessment would recognize and factor in at least some environmental restrictions limitations occasioned by Colabufo's COPD.

Lastly, ALJ Koennecke declined to recognize manipulative limitations. Dr. Gofran found Colabufo unable to perform fingering activities bilaterally (T. 588); Dr. Silverman opined that Colabufo can never perform reaching activities in all directions, bilaterally, and never perform push/pull activities with his right hand (T. 512); and Dr. Martin maintained that Colabufo only occasionally can reach, handle, finger, feel, and push/pull, bilaterally (T. 506). By definition, "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83–10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK THE MEDICAL VOCATIONAL RULES OF APPENDIX 2, 1983 WL 31251, at *5 (SSA 1983). Given this definition, a residual functional capacity finding of capacity to perform a full range of sedentary work is fatally flawed when evidence unequivocally establishes such manipulative limitations.

---

[29]    *See* SSR 96-9p, 1996 WL 374185, at *9.

[30]    *Id.*

In sum, ALJ Koennecke erred when failing to mention or factor in functional effects of *any* nonexertional limitation when formulating Colabufo's residual functional capacity.

## VIII.  Substantial Rights

Congressional mandates requiring courts to review administrative decrees in light of "the rule of prejudicial error" and to disregard all administrative errors and defects not affecting "substantial rights" refer to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders*, 556 U.S. 396, 406-08 (2009).  Under this doctrine, a reviewing court must reverse and remand when an administrative law judge errs unless, as a matter of law, the result was not affected by the error.  *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n. 9 (1977).  In other words, administrative legal error is harmless when the same result would have been reached had the error not occurred.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

In this instance, a substantial right was affected by ALJ Koennecke's disregard of Colabufo's nonexertional limitations.  Even if ALJ Koennecke did not give controlling weight to Colabufo's treating physicians' opinions, she could not ignore postural, environmental and manipulative limitations borne out by the medical evidence.  Such limitations may have eroded the unskilled sedentary occupational base to the extent that testimony from a vocational expert would be necessary to determine if jobs remain that Colabufo could perform.  Consequently, a reviewing court cannot confidently conclude that the case would have been decided the same way notwithstanding the error.  The error, therefore, is not harmless.

## IX.  Recommendation

The Commissioner's decision denying disability benefits should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings.

## X.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the __29__ day of ____April____ 2014.

Earl S. Hines
United States Magistrate Judge